IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 7 |
| | : | |
| JEROME HOWARD, | : | CASE NO. 21-50356-pwb |
| Debtor. | : | |
| | : | |
| | : | |
| CONSUMERS CREDIT UNION, | : | CONTESTED MATTER |
| | : | |
| Movant. | : | |
| | : | |
| vs. | : | |
| JEROME HOWARD , | : | |
| S. GREGORY HAYS, Trustee | : | |
| | : | |
| Respondents. | : | |
| | : | |

**NOTICE OF MOTION FOR RELIEF FROM AUTOMATIC STAY**

Movant has filed documents with the court to obtain relief from the automatic stay.

**YOUR RIGHTS MAY BE AFFECTED. You should read these documents carefully and discuss them with your attorney, if you have one in this bankruptcy case. If you do not have an attorney, you may wish to consult one.**

If you do not want the court to grant relief from the automatic stay or if you want the court to consider your views on the motion, then you or your attorney shall attend the hearing scheduled to be held on

**March 24. 2021 at 10:15 A.m., at the address of the Clerk's Office is:**

**United States Bankruptcy Court, Courtroom 1401,75 Ted Turner Drive S.W., Atlanta, Georgia 30303.**

*"Given the current public health crisis, hearings may be telephonic only. Please check the "Important Information Regarding Court Operations During COVID-19 Outbreak" tab at the top of the GANB Website prior to the hearing for instructions on whether to appear in person or by phone." http://www.ganb.uscourts.gov/news/public-notice-regarding-court-operations-during-covid-19-outbreak*

1

If you or your attorney does not take these steps, the court may decide that you do not oppose the relief sought in the motion and may enter an order granting relief.

You may also file a written response to the pleading with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response. Send your response so that it is received by the Clerk at least two business days before the hearing.

If a hearing on the motion for relief from the automatic stay cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty days of filing the motion and agrees to a hearing on the earliest possible date. Movant consents to the automatic stay remaining in effect until the Court orders otherwise.

The address of the Clerk's Office is:
**Clerk, United States Bankruptcy Court, 75 Ted Turner Drive SW, Suite 1340, Atlanta, Georgia 30303.**

You must also send a copy of your response to the undersigned at the address stated below.

Dated this:    2/22/2021

/s/Richard B. Maner

Richard B. Maner GA BAR NO. 486588
Attorney for Movant
Richard B. Maner, PC
180 Interstate North Pkwy, Suite 200
Atlanta, GA 30339
(404) 252-6385
rmaner@rbmlegal.com

2

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CHAPTER 7 |
| JEROME HOWARD | CASE NO. 21-50356-pwb |
| Debtor. | |
| Consumers Credit Union, | CONTESTED MATTER |
| Movant. | |
| vs.<br>JEROME HOWARD,<br>S. GREGORY HAYS, Trustee | |
| Respondents. | |

### MOTION FOR RELIEF FROM THE AUTOMATIC STAY

COMES NOW, the Movant Consumers Credit Union, its assignees and/or successors in interest (hereinafter referred to as "Movant"), and hereby shows this Court the following:

1. Pursuant to 11 U.S.C. § 362(d)(1) and § 362(d)(2) and Fed. R. Bankr. P. 4001, the Movant seeks an Order lifting the automatic stay for purposes of allowing it to enforce its security interest in certain property of the estate in accordance with the terms of a certain Retail Installment Agreement and with applicable bankruptcy law.

2. That on or about January 14, 2021, the above named Debtor filed his Chapter 7 Petition in Bankruptcy with this Court.

3. Prior to the filing of the petition, on October 1, 2019, Debtor made, executed and delivered a Retail Installment Contract ("Contract") to Movant or its predecessor which bears

3

interest as specified therein. The original Contract is held by Movant and a copy is attached hereto as **Exhibit "A"** and is incorporated by reference.

4. The indebtedness evidenced by the Contract is secured by a security interest in a **2019 Mitsubishi Outlander, VIN JA4AP3AU9KU001740** ("the Vehicle") as evidenced by a Certificate of Title, filed with the Department of Motor Vehicles, State of Georgia, a copy of which is attached hereto as **Exhibit "B"** and is made a part hereof.

5. Debtor has informed through his counsel on February 12, 2021 that he wishes to surrender the subject Vehicle to Movant.

6. As of January 26, 2021, the outstanding Obligations are:

| Unpaid Principal Balance | $24,259.61 |
| Unpaid, Accrued Interest | $742.47 |
| Late Charges | $29.00 |
| Minimum Outstanding Obligations | $25,031.08 |

7. In addition to the other amounts due to Movant reflected herein, as of the date hereof, in connection with seeking the relief requested in the Motion, Movant has also incurred $838.00 in legal fees and costs. Movant reserves all rights to seek an award or allowance of such fees and costs in accordance with applicable loan documents and related agreements, the Bankruptcy Code and otherwise applicable law.

8. The following chart sets forth the number and amount of payments due pursuant to the terms of the Note that have been missed by the Debtor(s):

| Number of Missed Payments | From | To | Monthly Payment Amount | Total Missed Payments |
|---|---|---|---|---|
| 2 | 1/15/21 | 2/15/21 | $566.58 | $1,133.16 |
| Late Charges | | | | $29.00 |
| Less partial payments: | | | | ($4.42) |
| | | | | **Total: $1,157.74** |

4

9. The commercially reasonable value of the Vehicle is approximately $16,600.00, as indicated by the N.A.D.A. Official Used Car Guide, as evidenced by **Exhibit "C"** attached hereto and made a part hereof.

10. There are no other known liens upon the Vehicle, as evidenced by the Debtor's Schedule D, filed with this Court

11. Based upon the foregoing, there is no equity in the subject property for the benefit of the bankruptcy estate.

12. "Cause" exists for lifting the Automatic Stay, including a lack of adequate protection and lack of equity.

WHEREFORE, Movant prays judgment as follows:

1.) For an Order granting relief from the Automatic Stay, permitting this Movant to move ahead with any actions necessary to take possession of the subject Vehicle under Movant's Contract, and to dispose of same in a commercially reasonable manner.

2.) For such Order regarding adequate protection of Movant's interest as this Court deems proper.

3.) For attorneys' fees and costs for suit incurred herein.

4.) For an Order waiving the 14-day stay described by Bankruptcy Rule 4001(a)(3).

5.) For such other relief as this Court deems appropriate.

/s/Richard B. Maner
Richard B. Maner GA BAR NO. 486588
Attorney for Movant
Richard B. Maner, PC
180 Interstate North Pkwy, Suite 200
Atlanta, GA 30339
(404) 252-6385
rmaner@rbmlegal.com

BANKRUPTCY CASE NO. 21-50356-pwb

CHAPTER 7

CERTIFICATE OF SERVICE

I, Richard B. Maner, 180 Interstate North Pkwy, Suite 200, Atlanta, GA 30339, certify:

That on the date below, I served a copy of the within NOTICE OF ASSIGNMENT OF HEARING, together with the MOTION FOR RELIEF FROM THE AUTOMATIC STAY filed in this bankruptcy matter on the following parties at the addresses shown, by regular United States Mail, postage prepaid, unless another manner of service is expressly indicated:

Jerome Howard
1832 Arkose Drive, SE
Atlanta, GA 30316

Karen King, Esquire                             *(served via ECF notification)*

S. Gregory Hays                                 *(served via ECF notification)*

I CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Executed on:   2/22/2021      By:   /s/Richard B. Maner
                (date)              Richard B. Maner GA BAR NO. 486588
                                    Attorney for Movant

6

**CONSUMERS CREDIT UNION**
*Your life. Our commitment.*



# LOAN AND SECURITY AGREEMENTS AND DISCLOSURE STATEMENT

| [X] FIXED RATE<br>[ ] VARIABLE RATE | LOAN DATE<br>10/01/2019 | MEMBER NUMBER<br>REDACTED | ACCOUNT NUMBER<br>REDACTED | GROUP POLICY NUMBER<br>REDACTED | MATURITY DATE<br>01/15/2025 |
|---|---|---|---|---|---|

| BORROWER 1 | BORROWER 2 |
|---|---|
| NAME AND ADDRESS<br>Jerome Howard<br>1832 Arkose Dr<br>Atlanta, GA 30316 | NAME (AND ADDRESS IF DIFFERENT FROM BORROWER 1) |

## TRUTH IN LENDING DISCLOSURE 'e' means an estimate

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate.<br>**12.05%** | FINANCE CHARGE<br>The dollar amount the credit will cost you.<br>**$9466.50** | Amount Financed<br>The amount of credit provided to you or on your behalf.<br>**$26227.27** | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled.<br>**$35693.77** | Total Sale Price<br>The total cost of your purchase on credit is $ **N/A** which includes your downpayment of $ **N/A**. |
|---|---|---|---|---|

**Your Payment Schedule Will Be:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 62 | $566.58 | Monthly (12/yr)  BEGINNING  11/15/2019 |
| and a final payment of | $565.81 | DUE BY  01/15/2025 |

**Prepayment:** If you pay off early you will not have to pay a penalty.

**Required Deposit:** The Annual Percentage Rate does not take into account your required deposit, if any.

[ ] **Assumption:** Someone buying your mobile home cannot assume the remainder of the loan on the original terms.

**Demand:** [ ] This obligation has a demand feature.
[ ] All disclosures are based on an assumed maturity of one year.

**Property Insurance:** You may obtain property insurance from anyone you want that is acceptable to the credit union. If you get the insurance from us, you will pay $

**Late Charge:**
- Late Fee for payments received 10 days late     $29.00
- Returned Payment Fee                            $30.00

| Filing Fees<br>$18.00 | Non-Filing Insurance<br>$ N/A |
|---|---|

**Security:** Collateral securing other loans with the credit union may also secure this loan. You are giving a security interest in your shares and dividends and, if any, your deposits and interest in the credit union; and the property described below:

| Collateral | Property/Model/Make | Year | I.D. Number | Type | Value | Key Number |
|---|---|---|---|---|---|---|
| Mitsubishi | Outlander Spor | 2019 | JA4AP3AU9KU001740 | New Auto | $20,695.00 | |

Other (Describe)
Pledge of Shares            in Account No.            $            in Account No.

**Variable Rate:**

**Share Secured:** The Annual Percentage Rate (APR) for Share secured advances will be the dividend rate being paid on the Shares (Index) on the date of the advance plus 2.00%. The rates are subject to change in the quarter the dividend rate being paid on Shares changes. The APR will never be less than 0.00%. The APR will never be greater than 99.99%. Any increase in the APR will result in more payments of the same amount.

See your contract documents for any additional information about nonpayment, default, and any required repayment in full before the scheduled date.

## SIGNATURES

By signing as Borrower, you agree to the terms of the Loan Agreement. If property is described in the "Security" section of the Truth in Lending Disclosure, you also agree to the terms of the Security Agreement. If you sign as "Owner of Property" you agree only to the terms of the Security Agreement.
**CAUTION: IT IS IMPORTANT THAT YOU THOROUGHLY READ THE AGREEMENT BEFORE YOU SIGN IT.**

| X /s/ Jerome Howard (Oct 2, 2019) | Oct 2, 2019 | X | (SEAL) |
|---|---|---|---|
| BORROWER 1 | DATE | BORROWER 2 | DATE |
| X | (SEAL) | X | (SEAL) |
| [ ] OTHER BORROWER [ ] OWNER OF PROPERTY [ ] WITNESS | DATE | [ ] OTHER BORROWER [ ] OWNER OF PROPERTY [ ] WITNESS | DATE |

© CUNA MUTUAL GROUP, 1999, 2000, 01, 02, 03, 04, 06, 08, ALL RIGHTS RESERVED                        NXX019 (LASER)

EXHIBIT A

| Credit Union | CONSUMERS CREDIT UNION | MEMBER NUMBER | Acct. No. |
|---|---|---|---|
| Borrower(s) | Jerome Howard | | |

## ITEMIZATION OF THE AMOUNT FINANCED

| Itemization of Amount Financed of $26227.27 | Amount Given to You Directly $99.00 | Amount Paid on Your Account | Prepaid Finance Charge $ N/A |
|---|---|---|---|

Amounts Paid to Others on Your Behalf: (If an amount is marked with an asterisk (*) we will be retaining a portion of the amount.)

| | | | |
|---|---|---|---|
| $18.00 | To Title Fee | | To |
| * $499.00 | To CUNA GAP | | To |
| $25611.27 | To SANTANDER | | To |
| | To | | To |
| | To | | To |
| | To | | To |
| | To | | To |

## LOAN AGREEMENT

In this Loan Agreement ("Agreement") all references to "Credit Union," "we," "our," or "us," mean the Credit Union whose name appears above and anyone to whom the Credit Union assigns or transfers this Agreement. All references to "you," or "your" mean each person who signs this Agreement as a borrower.

**1. PROMISE TO PAY** - You promise to pay $26227.27 to the Credit Union plus interest on the unpaid balance until what you owe has been repaid. For fixed rate loans the interest rate is 12.05% per year.

For variable rate loans the initial interest rate is 12.05% per year and will vary as follows:

**Share Secured:** The Annual Percentage Rate (APR) for Share secured advances will be the dividend rate being paid on the Shares (Index) on the date of the advance plus 2.00%. The rates are subject to change in the quarter the dividend rate being paid on Shares changes. The APR will never be less than 0.00%. The APR will never be greater than 99.99%. Any increase in the APR will result in more payments of the same amount.

**Money Market Secured:** The Annual Percentage Rate (APR) for Money Market secured advances will be he lowest dividend rate greater than 0.00% being paid on the lowest Money market (Index) on the date of the advance plus 2.00%. The rates are subject to change in the quarter the dividend rate being paid on Money Markets changes. The APR will never be less than 0.00%. The APR will never be greater than 99.99%. Any increase in the APR will result in more payments of the same amount.

**Collection Costs:**

You promise to pay, subject to applicable law, all costs of collecting what you owe under this Agreement and all costs of realizing on any security for the Plan including court costs, collection agency fees and reasonable attorney's fees. We may enter into a contingent or hourly fee arrangement with an attorney or collection agency and you agree that such an Agreement is reasonable. This provision also applies to bankruptcy, appeals or postjudgment proceedings.

**2. PAYMENTS** - You promise to make payments of the amount and at the time shown in the Truth in Lending Disclosure. If this is a variable rate loan, the Promise to Pay section tells you whether, if the interest rate increases, you will have to make more payments, higher payments, or if the final payment will be a balloon payment. You may prepay any amount without penalty. If you prepay any part of what you owe, you are still required to make the regularly scheduled payments, unless we have agreed to a change in the payment schedule. Because this is a simple interest loan, if you do not make payments exactly as scheduled, your final payment may be more or less than the amount of the final payment that is disclosed. If you elect voluntary payment protection, we will either include the premium or program fees in your payments or extend the term of your loan. If the term is extended, you will be required to make additional payments of the scheduled amount, until what you owe has been paid. You promise to make all payments to the place we choose. If this loan refinances another loan we have with you, the other loan will be canceled and refinanced as of the date of this loan. Unless otherwise required by law, payments will be applied to amounts owed in the manner we choose.

**3. LOAN PROCEEDS BY MAIL** - If the proceeds of this loan are mailed to you, interest on this loan begins on the date the loan proceeds are mailed to you.

**4. SECURITY FOR LOAN** - This Agreement is secured by all property described in the "Security" section of the Truth in Lending Disclosure. Property securing other loans you have with us also secures this loan, unless the property is a dwelling. A dwelling secures this loan only if it is described in the "Security" section of the Truth in Lending Disclosure for this loan. In addition to your pledge of shares, we may also have what is known as a statutory lien on all individual and joint accounts you have with us. A statutory lien means we have the right under federal law and many state laws to claim an interest in your accounts. We can enforce a statutory lien against your shares and dividends, and if any, interest and deposits, in all individual and joint accounts you have with us to satisfy any outstanding financial obligation that is due and payable to us. We may exercise our right to enforce this lien without further notice to you, to the extent permitted by law. For all borrowers: You pledge as security for this loan all shares and dividends and, if any, all deposits and interest in all joint and individual accounts you have with the credit union now and in the future. The statutory lien and/or your pledge will allow us to apply the funds in your account(s) to what you owe when you are in default. The statutory lien and your pledge do not apply to any Individual Retirement Account or any other account that would lose special tax treatment under state or federal law if given as security.

**5. DEFAULT** - You will be in default under this Agreement if you do not make a payment of the amount required on or before the date it is due. You will be in default if you break any promise you made in connection with this loan or if anyone is in default under any security agreement made in connection with this Agreement. You will be in default if you die, file for bankruptcy, become insolvent (that is, unable to pay your bills and loans as they become due), or if you made any false or misleading statements in your loan application. You will also be in default if something happens that we believe may seriously affect your ability to repay what you owe under this Agreement or if you are in default under any other loan agreement you have with us.

**6. ACTIONS AFTER DEFAULT** - When you are in default, we may demand immediate payment of the entire unpaid balance under this Agreement. You waive any right you have to receive demand for payment, notice of intent to demand immediate payment and notice of demand for immediate payment. If we demand immediate payment, you will continue to pay interest at the rate provided for in this Agreement, until what you owe has been repaid. We will also apply against what you owe any shares and/or deposits given as security under this Agreement. We may also exercise any other rights given by law when you are in default.

| Credit Union | CONSUMERS CREDIT UNION | MEMBER NUMBER REDACTED | Acct. No. |
|---|---|---|---|
| Borrower(s) | Jerome Howard | | |

## LOAN AGREEMENT (continued)

**7. EACH PERSON RESPONSIBLE** - Each person who signs this Agreement will be individually and jointly responsible for paying the entire amount owed under this Agreement. This means we can enforce our rights against any one of you individually or against all of you together.

**8. LATE CHARGE** - If you are late in making a payment, you promise to pay the late charge shown in the Truth in Lending Disclosure. If no late charge is shown, you will not be charged one.

**9. DELAY IN ENFORCING RIGHTS** - We can delay enforcing any of our rights under this Agreement any number of times without losing the ability to exercise our rights later. We can enforce this Agreement against your heirs or legal representatives.

**10. CONTINUED EFFECTIVENESS** - If any part of this Agreement is determined by a court to be unenforceable, the rest will remain in effect.

**11. NOTICES** - Notices will be sent to you at the most recent address you have given us in writing. Notice to any one of you will be notice to all.

**12. USE OF ACCOUNT** - You promise to use your account for consumer (personal, family or household) purposes, unless the credit union gives you written permission to use the account also for agricultural or commercial purposes, or to purchase real estate.

**13. NO ORAL AGREEMENTS** -- THIS NOTE CONSTITUTES A "WRITTEN LOAN AGREEMENT" PURSUANT TO SECTION 26.02 OF THE TEXAS BUSINESS AND COMMERCE CODE, IF SUCH SECTION APPLIES. THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

**14. OTHER PROVISIONS** -

Default Rate: A default ANNUAL PERCENTAGE RATE of up to 21.99% may be imposed if you are in default under this Agreement including failure to provide us with title to the property within thirty (30) days of receiving the loan proceeds.

© CUNA MUTUAL GROUP, 1999, 2000, 01, 02, 03, 04, 06, 08, ALL RIGHTS RESERVED                                                                                           NXX019 (LASER)

| Credit Union CONSUMERS CREDIT UNION | MEMBER NUMBER REDACTED | Acct. No. |
|---|---|---|
| Borrower(s) Jerome Howard | | |

## SECURITY AGREEMENT

In this Agreement all references to "credit union," "we," "our" or "us" mean the credit union whose name appears on this document and anyone to whom the credit union assigns or transfers this Agreement. All references to the "Loan" mean the loan described in the Loan Agreement that is part of this document. All references to "you" or "your" mean any person who signs this Agreement.

1. **THE SECURITY FOR THE LOAN** - You give us what is known as a security interest in the property described in the "Security" section of the Truth in Lending Disclosure that is part of this document ("the Property"). The security interest you give includes all accessions. Accessions are things which are attached to or installed in the Property now or in the future. The security interest also includes any replacements for the Property which you buy within 10 days of the Loan and any extensions, renewals or refinancings of the Loan. It also includes any money you receive from selling the Property or from insurance you have on the Property. If the value of the Property declines, you promise to give us more property as security if asked to do so.

2. **WHAT THE SECURITY INTEREST COVERS/CROSS COLLATERAL PROVISIONS** - The security interest secures the Loan and any extensions, renewals or refinancings of the Loan. If the Property is not a dwelling, the security interest also secures any other loans, including any credit card loan, you have now or receive in the future from us and any other amounts you owe us for any reason now or in the future, except any loan secured by your principal residence. If the Property is household goods as defined by the Federal Trade Commission Credit Practices Rule or your principal residence, the Property will secure only this Loan and not other loans or amounts you owe us.

3. **OWNERSHIP OF THE PROPERTY** - You promise that you own the Property or, if this Loan is to buy the Property, you promise you will use the Loan proceeds for that purpose. You promise that no one else has any interest in or claim against the Property that you have not already told us about. You promise not to sell or lease the Property or to use it as security for a loan with another creditor until the Loan is repaid. You promise you will allow no other security interest or lien to attach to the Property either by your actions or by operation of law.

4. **PROTECTING THE SECURITY INTEREST** - If your state issues a title for the Property, you promise to have our security interest shown on the title. We may have to file what is called a financing statement to protect our security interest from the claims of others. You irrevocably authorize us to execute (on your behalf), if applicable, and file one or more financing, continuation or amendment statements pursuant to the Uniform Commercial Code (UCC) in form satisfactory to us. You promise to do whatever else we think is necessary to protect our security interest in the Property. You also promise to pay all costs, including but not limited to any attorney fees, we incur in protecting our security interest and rights in the Property, to the extent permitted by applicable law.

5. **USE OF PROPERTY** - Until the Loan has been paid off, you promise you will: (1) Use the Property carefully and keep it in good repair. (2) Obtain our written permission before making major changes to the Property or changing the address where the Property is kept. (3) Inform us in writing before changing your address. (4) Allow us to inspect the Property. (5) Promptly notify us if the Property is damaged, stolen or abused. (6) Not use the Property for any unlawful purpose. (7) Not retitle Property in another state without telling us.

6. **PROPERTY INSURANCE, TAXES AND FEES** - You promise to pay all taxes and fees (like registration fees) due on the Property and to keep the Property insured against loss and damage. The amount and coverage of the property insurance must be acceptable to us. You may provide the property insurance through a policy you already have, or through a policy you get and pay for. You promise to make the insurance policy payable to us and to deliver the policy or proof of coverage to us if asked to do so.
If you cancel your insurance and get a refund, we have a right to the refund. If the Property is lost or damaged, we can use the insurance settlement to repair the Property or apply it towards what you owe. You authorize us to endorse any draft or check which may be payable to you in order for us to collect any refund or benefits due under your insurance policy.
If you do not pay the taxes or fees on the Property when due or keep it insured, we may pay these obligations, but we are not required to do so. Any money we spend for taxes, fees or insurance will be added to the unpaid balance of the Loan and you will pay interest on those amounts at the same rate you agreed to pay on the Loan. We may receive payments in connection with the insurance from a company which provides the insurance. We may monitor our loans for the purpose of determining whether you and other borrowers have complied with the insurance requirements of our loan agreements or may engage others to do so. The insurance charge added to the Loan may include (1) the insurance company's payments to us and (2) the cost of determining compliance with the insurance requirements. If we add amounts for taxes, fees or insurance to the unpaid balance of the Loan, we may increase your payments to pay the amount added within the term of the insurance or term of the Loan.

7. **INSURANCE NOTICE** - If you do not purchase the required property insurance, the insurance we may purchase and charge you for will cover only our interest in the Property. The premium for this insurance may be higher because the insurance company may have given us the right to purchase insurance after uninsured collateral is lost or damaged. The insurance will not be liability insurance and will not satisfy any state financial responsibility or no fault laws.

8. **DEFAULT** - You will be in default if you break any promise you make or fail to perform any obligation you have under this Agreement. You will also be in default under this Agreement if the Loan is in default. You will be in default if any property you have given us as security is repossessed by someone else, seized under a forfeiture or similar law, or if anything else happens that significantly affects the value of the property or our security interest in it.

9. **WHAT HAPPENS IF YOU ARE IN DEFAULT** - When you are in default, we may demand immediate payment of the outstanding balance of the Loan without giving you advance notice and take possession of the Property. You agree the Credit Union has the right to take possession of the Property without judicial process if this can be done without breach of the peace. If we ask, you promise to deliver the Property at a time and place we choose. If the property is a motor vehicle or boat, you agree that we may obtain a key or other device necessary to unlock and operate it, when you are in default. We will not be responsible for any other property not covered by this Agreement that you leave inside the Property or that is attached to the Property. We will try to return that property to you or make it available for you to claim.
After we have possession of the Property, we can sell it and apply the money to any amounts you owe us. We will give you notice of any public disposition or the date after which a private disposition will be held. Our expenses for taking possession of and selling the Property will be deducted from the money received from the sale. Those costs may include the cost of storing the Property, preparing it for sale and attorney's fees to the extent permitted under state law or awarded under the Bankruptcy Code.
If you have agreed to pay the Loan, you must pay any amount that remains unpaid after the sale money has been applied to the unpaid balance of the Loan and to what you owe under this Agreement. You agree to pay interest on that amount at the same rate as the Loan until that amount has been paid.

10. **DELAY IN ENFORCING RIGHTS AND CHANGES IN THE LOAN** - We can delay enforcing any of our rights under this Agreement any number of times without losing the ability to exercise our rights later. We can enforce this Agreement against your heirs or legal representatives. If we change the terms of the Loan, you agree that this Agreement will remain in effect.

11. **CONTINUED EFFECTIVENESS** - If any part of this Agreement is determined by a court to be unenforceable, the rest will remain in effect.

12. **NOTICE TO NORTH DAKOTA BORROWERS PURCHASING A MOTOR VEHICLE** - THE MOTOR VEHICLE IN THIS TRANSACTION MAY BE SUBJECT TO REPOSSESSION. IF IT IS REPOSSESSED AND SOLD TO SOMEONE ELSE, AND ALL AMOUNTS DUE TO THE SECURED PARTY ARE NOT RECEIVED IN THAT SALE, YOU MAY HAVE TO PAY THE DIFFERENCE.

13. **NOTICE FOR ARIZONA OWNERS OF PROPERTY** - It is unlawful for you to fail to return a motor vehicle that is subject to a security interest, within thirty days after you have received notice of default. The notice will be mailed to the address you gave us. It is your responsibility to notify us if your address changes. The maximum penalty for unlawful failure to return a motor vehicle is one year in prison and/or a fine of $150,000.00.

☐ The following notice applies ONLY when the box at left is marked.

14. **NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

15. **OTHER PROVISIONS** -



Collateral Management Services
9750 Goethe Road | Sacramento, CA 95827
www.dealertrack.com

# Consumers Credit Union

## Lien and Title Information

### Lienholder

| | |
|---|---|
| **ELT Lien ID** | REDACTED |
| **Lienholder** | CONSUMERS CREDIT UNION |
| **Lienholder Address** | |
| **Lien Release Date** | |

### Vehicle and Titling Information

| | | | |
|---|---|---|---|
| **VIN** | JA4AP3AU9KU001740 | **Issuance Date** | 12/3/2019 |
| **Title Number** | REDACTED | **Received Date** | 12/3/2019 |
| **Title State** | GA | **ELT/Paper** | ELECTRONIC |
| **Year** | 2019 | **Odometer Reading** | |
| **Make** | MITS | **Branding** | |
| **Model** | | | |
| **Owner 1** | JEROME HOWARD | | |
| **Owner 2** | | | |
| **Owner Address** | 1832 ARKOSE DR SE<br>ATLANTA, GA 303164114 | | |

**Printed:** Tuesday, January 26, 2021 7:55:56 AM PST

EXHIBIT B



NADAguides Value Report    1/26/2021

# 2019 Mitsubishi Outlander
## Utility 4D ES 2WD I4

## Values

|  | Rough Trade-In | Average Trade-In | Clean Trade-In | Clean Retail |
|---|---|---|---|---|
| Base Price | $12,400 | $13,550 | $14,475 | $16,600 |
| Mileage (0) | N/A | N/A | N/A | N/A |
| Total Base Price | $12,400 | $13,550 | $14,475 | $16,600 |
| Options |  |  |  |  |
| **Price + Options** | **$12,400** | **$13,550** | **$14,475** | **$16,600** |

Selling Your Car? **Get an Online Offer** in 2 Minutes.

| Certified Pre-Owned (CPO) ⓘ |  |  |  | +$1,025 |
|---|---|---|---|---|
| **Certified Price with Options** |  |  |  | **$17,625** |

| Popular Mitsubishi Models | Popular Mitsubishi Vehic... | Car Shopping Guides | Cars By Price |
|---|---|---|---|
| Mitsubishi Outlander | 2021 Mitsubishi Outlander Sport | 10 Most Popular Trucks | Under $15,000 |
| Mitsubishi Outlander Sport | 2021 Mitsubishi Mirage | 10 Most Popular Small Cars | $15,000 - $25,000 |
| Mitsubishi Mirage | 2021 Mitsubishi Mirage G4 | 10 Most Popular Midsize SUVs an... | $25,000 - $35,000 |
| Mitsubishi Mirage G4 | 2020 Mitsubishi Outlander | 10 Most Popular Hatchbacks and... | $35,000 - $45,000 |
| Mitsubishi Eclipse Cross | 2020 Mitsubishi Mirage | 10 Most Popular Luxury Cars | $45,000 - $55,000 |
| Mitsubishi Outlander PHEV | 2020 Mitsubishi Eclipse Cross | Most Reliable Crossovers and SU... | $55,000 - $65,000 |
| Mitsubishi Lancer | 2020 Mitsubishi Outlander Sport | 2019 Vehicle Dependability: Most... | $65,000 - $75,000 |
| Mitsubishi i-MiEV | 2020 Mitsubishi Mirage G4 | 10 Most Popular Luxury SUVs an... | Over $75,000 |
| Mitsubishi Lancer Evolution | 2019 Mitsubishi Outlander | Most Reliable 2017 Trucks |  |
| Mitsubishi Galant | 2018 Mitsubishi Outlander | 10 Most Popular Large SUVs and... |  |

© 2021 J.D. Power. All rights reserved. ® A registered trademark of the National Automobile Dealers Association, under license to J.D. Power.

EXHIBIT C